[Civ. No. 21722. Second Dist., Div. Three. Feb. 11, 1957.]

MILDRED KAY STEPHENSON, Appellant, v. MAE STONEMAN et al., Respondents.

*Assigned by Chairman of Judicial Council.

Kenny & Morris, Robert W. Kenny, Richard Richards and John R. Crowe for Appellant.

Alexander H. Schullman and Jack R. Berger for Respondents.

WOOD (Parker), J.—Petitioner sought a writ of mandate (in the superior court) commanding respondents to place her name on a ballot as a candidate for executive secretary of respondent union. Her petition was denied, and she appeals from the judgment.

Respondent Mae Stoneman is, and for approximately 26 years has been, executive secretary of respondent Waitresses and Cafeteria Workers Local Union Number 639.

On June 7, 1955, petitioner herein and respondent Stoneman were nominated for the office of executive secretary.

Section 11 of the bylaws of the local union provided, in part: "No member of this Union shall be 'eligible for any office . . . unless she shall have been a member in continuous good standing for two (2) years prior to nominations and shall have attended at least one (1) meeting a month, unless excused by the Union. All members may secure a permanent meeting attendance record by presenting their union membership book to the Inside Guard for a meeting attendance stamp."

Section 10 of the bylaws provided, in part: "Seven members appointed, four by the President and three by the Vice-President, at the nomination meeting on the first Tuesday in May, shall constitute the Election Board. The Election Board shall determine all questions of eligibility of members to run for office, subject to appeal to the General President."

The election board determined that petitioner was not eligible. Apparently the basis for the determination was that she had not attended the required number of meetings. Petitioner appealed from that decision to the general president of the international union, at Cincinnati, Ohio. He sustained the decision of the board.

Petitioner contends (on appeal from the judgment of the superior court) that she was not given a fair hearing by the board; and that certain findings of the trial court were erroneous. She argues that the board received evidence in her absence; that she was denied the right to confront and cross-examine witnesses; and that she did not have proper

notice that certain evidence (enlarged photographs of her union book) had been presented to the board.

On June 13, 1955, the election board held a meeting to determine the eligibility of candidates for various offices in the local union. At the meeting respondent Stoneman went with petitioner into the room, where the board was in session, and introduced petitioner to the members of the board. Petitioner testified that she was in the room five to ten minutes; after she was introduced, the respondent Stoneman asked her for her union book; she (petitioner) complied with the request; then said respondent asked petitioner to leave the room; petitioner complied with the request. The book which petitioner presented at the meeting contained "stamps" which indicated that she had attended at least one meeting a month for two years prior to her nomination.

The minutes of that meeting (June 13, received in evidence as a part of plaintiff's Exhibit 3) recite, in part, that: Petitioner was introduced to the board members by respondent Stoneman; petitioner, upon request of the chairman, presented her dues (union) book, and then petitioner was excused by the chairman; such procedure was carried out until each candidate had been interviewed and had submitted her union book; secretary Stoneman submitted the membership file card of each candidate of her meeting attendance record for the past two years; Grace Finnigan, who is inside guard of the local union and custodian of the "meeting stamp" and attendance cards, requested permission to appear before the board; such permission was granted, and she stated that the meeting stamps recorded in petitioner's union book were not inserted by her (Finnigan) with the exception of three or four dating back to April, 1953, that she (Finnigan) had never had a substitute as inner guard and had not missed a meeting for the past 10 years; after examining the file card of petitioner, and hearing the report of secretary Stoneman that one of the "meeting stamps" had disappeared from the office after the last December meeting, and after observing discrepancies in the meeting stamps in petitioner's book and meeting stamps in other books, and finding that petitioner's book was the only one without the official meeting stamp, a motion that petitioner was not eligible was unanimously carried; the board ruled as to other candidates (names were stated); the board called secretary Stoneman into the meeting, announced that its work had been completed, and adjourned.

The minutes of a meeting of the board held on June 15, 1955 (part of Exhibit 3), recite in part: This meeting was called at the request of Winnie Somers, a member of the board, who advised the board she had additional information to submit; all members were present; (the board declared whether or not eight nominees, separately referred to, were eligible) then board member Williams made a motion, with reference to petitioner, "that according to office records she [petitioner] is not eligible to run for office of Secretary-Treasurer but according to her book she is eligible and that the Committee [board] request an immediate investigation and decision of the validity of the meeting stamps in her Union book by the International Union. Carried unanimously"; then the board called secretary Stoneman into the meeting and inquired if the record submitted at that meeting would be referred to the international union; the secretary replied in the affirmative.

At the meeting of June 15, respondent Stoneman presented to the board a photostatic enlargement of petitioner's union book, showing the meeting stamps. Respondent Stoneman testified (at the trial) that Mr. Slott, who works under her supervision, "may have come in there [board room] with me for the purpose of explaining the" enlargements.

On June 20, 1955, Mr. Miller, the general president, sent a telegram to respondent Stoneman which stated: "You are directed to have your election committee review all the material concerning the eligibility of each candidate for election and to make a determination of eligibility based upon the evidence presented. Each candidate should then be advised of the ruling by the election committee and the reasons for such ruling. Any candidate wishing to protest the ruling may appeal to this office. . . . This office will then pass upon all such appeals promptly."

On June 20 respondent Stoneman sent a telegram to petitioner stating, in part, that the chairman of the board had instructed her (Stoneman) to invite petitioner to appear at a meeting of the board on June 21; and that evidence "has been presented to the board raising doubt" as to petitioner having attended certain meetings within the last two years. Also on June 20, respondent Stoneman mailed a letter to petitioner stating, in part, that evidence had been presented to the board that she had not attended meetings "for which you have an attendance stamp in your union book"; according to the office records petitioner attended meetings only in

seven months (specifically designated) in the past 24 months; the committee was in receipt of evidence that petitioner had worked on six certain days, during the time union meetings were being held, "for which [dates] there appears an attendance stamp in your book"; this evidence has raised a serious question as to the validity of the attendance stamp in petitioner's book; "you are requested to appear at the meeting and present any additional evidence you may have to establish that you attended one meeting a month for the past two years."

The minutes of a meeting of the board held on June 21 (part of Exhibit 3) recite, in part: All members of the board were present; secretary Stoneman and petitioner were called into the meeting by the chairman; Stoneman said the meeting was called pursuant to the direction of the general president; she also said that she had a letter from Mr. Cooper, president of the local joint executive board, indicating the payroll records of the Hayward Hotel pertaining to the employment of petitioner at the hotel during the past two years (approximately); she (Stoneman) also said that those records indicated that petitioner had been employed on six certain days (specifically designated) during the meeting hours of the union on those days; petitioner said that she had brought a witness, Mrs. Hunt (manager of the Hayward Hotel bars), to corroborate her claim that she (petitioner) had not worked on the dates referred to; the witness was called into the meeting; the payroll record of the hotel, as shown by the letter from Mr. Cooper, was read by respondent Stoneman; the witness said that she had encouraged all union members to attend membership meetings and that "on occasion she had even worked for the waitresses herself or assigned bartenders to waitresses' duties and had punched the time cards for them herself"; the chairman asked petitioner if she had any further evidence; petitioner replied in the negative; the chairman excused petitioner, the witness, and Stoneman; a motion was carried that petitioner was not eligible; all members, except Winnie Somers, voted for the motion.

On June 23, 1955, petitioner appealed, by telegram, from the decision of the election board to the general president. On June 24 respondent Stoneman sent a letter to the general president, pursuant to his request, enclosing copies of the minutes of the three meetings of the board, and a copy of the notice of meeting which was sent to petitioner. In that

letter respondent Stoneman said, among other things: ''I was not in that hearing room one minute when Sister Stephenson [petitioner] was not also present.'' On June 27 the general president sent a letter to petitioner stating that he sustained the decision of the local board.

At the trial in the superior court, Mrs. Hunt, the manager of the bars at the Hayward Hotel where petitioner was employed, testified to the effect that on certain occasions in October, November and December, 1953, she excused petitioner from her work at the time of union meetings. (The letter of Mr. Cooper, regarding dates of union meetings when petitioner was working at the hotel, included dates in October, November and December, 1953.) Mrs. Hunt testified further that, after she had finished her testimony before the board, respondent Stoneman said that her testimony was no good because she (Mrs. Hunt) was no longer an employee of the hotel and was not a union member.

Also at the trial, Miss Williams, a board member, testified to the effect that respondent Stoneman did not participate in, and was not present at the time of, the deliberations of the board regarding the eligibility of petitioner.

Also at the trial, Miss Williams and Mrs. Parker, another board member, testified to the effect that a comparison of the photostatic enlargements of the stamps in petitioner's book with enlargements of stamps in other books caused them to vote that petitioner was not eligible.

The court found, among other things, that the election board, acting in good faith and in accordance with the constitution of the international union and the bylaws of the local union, after proper notice having been served, met on June 13, 15, and 21, 1955, and considered evidence and determined that petitioner was ineligible to run for the office of secretary; that said actions and determination of the board were validly done and made in good faith; that the board was not dominated by respondent Stoneman or any other individual; that the minutes of the board meetings of June 13, 15, and 21, representing Exhibit 3, set forth a true record of the proceedings before the board; petitioner did not appeal the decision of the general president to the general executive board of the international union in accordance with the provisions of the constitution of the international union; petitioner did not exhaust all her remedies as provided by said constitution and the bylaws of the local union.

As above stated, petitioner (appellant) contends that she

was not given a fair hearing by the board. She argues, with respect to unfairness, that the statements of inner guard Finnigan, made before the board on June 13 regarding petitioner's union book, were made when petitioner was not present; that respondent Stoneman submitted a photostatic enlargement of petitioner's book to the board on June 15 when petitioner was not present; that petitioner did not have an opportunity to confront or cross-examine those persons; that she was not given notice of any discrepancies, based upon enlargements, with respect to the stamps in her book; and that she had no knowledge that evidence regarding discrepancies in her book had been considered by the board until she saw the minutes of the meetings, which was after the petition herein had been filed. The bylaws provided, as above shown, that the board has authority to ''determine all questions of eligibility of members to run for office.'' Whether or not the board accorded petitioner a fair hearing was a question of fact for the trial court. There were three meetings of the board. Prior to the last meeting (June 21) petitioner was notified by telegram and letter that the meeting would be held, and she was invited to be present and submit any additional evidence she might have to establish that she attended one meeting a month for the past two years. Also prior to that meeting she was advised by letter, sent by respondent Stoneman, that the office records of the union showed that during the past two years she had attended meetings only in April, May and June, 1953, December, 1954, and March, April and June, 1955; and that the board was in receipt of evidence that petitioner worked from 4:30 p. m. to 12:30 a. m. on October 6 and 20, November 3 and 17, and December 1 and 15, 1953, ''for which [dates] there appears an attendance stamp in your book.'' (The meetings commenced at 8 p. m.) That letter also stated that there was ''a serious question as to the validity of the meeting attendance stamp recorded in your union membership book.'' Petitioner attended the last meeting and presented testimony of Mrs. Hunt, who was the manager of the place where petitioner allegedly was working when the six union meetings were held. That testimony was to the effect that Mrs. Hunt had encouraged all union members to attend union meetings, and on occasions she or the bartenders had worked for the waitresses, and she had punched the time cards for the waitresses. After that testimony had been presented, petitioner was asked if she had any further evidence. She replied in the negative.

Mrs. Hunt did not specify any time when she allegedly excused petitioner from her employment so that she might attend the union meetings. It thus appears that petitioner knew, prior to the last meeting, that the validity of attendance stamps in her book was in question. The evidence at that meeting included the letter from Mr. Cooper regarding petitioner's employment at the Hayward Hotel. The letter stated that petitioner was working during certain hours on certain days in October, November and December, 1953. Those hours included hours when union meetings were held. ■ Under the evidence presented at the last meeting, the board could have found that petitioner was not present at some or all of the six union meetings which were held when petitioner allegedly was at her place of employment. It does appear that, at the first meeting, the inner guard Finnigan told the board, in the absence of petitioner, that she (Finnigan) had not placed the meeting stamps in petitioner's book except on three or four occasions during the two years involved. It also appears that, at the second meeting, photostatic enlargements of stamps in petitioner's union book were presented to the board in the absence of petitioner. As above stated, petitioner asserts that she did not know that evidence regarding discrepancies in her book had been considered by the board until after she had filed the petition herein. Apparently, that assertion was intended as an explanation of her failure to present evidence, other than the testimony of Mrs. Hunt, at the last meeting. The substance of that assertion was alleged in the amended petition, and it was not denied in the answer. Regardless of whether petitioner knew at the time of the last meeting that evidence regarding such discrepancies had been considered by the board, she knew at that time that the validity of attendance stamps in her book was an issue. She had an opportunity at that meeting to prove that her employer's records were not correct as to the dates when she worked or to prove that she was excused from her employment on those specific dates so that she might attend the union meetings. As above stated, Mrs. Hunt did not mention any specific date when she or anyone worked for petitioner. It does not appear that petitioner made any statement before the board as to where she was on the dates specified in her employer's records. On the appeal to the general president no point was made by petitioner as to any bias or prejudice on the part of the board or as to any unfairness regarding notice of the issue. It

cannot be said as a matter of law that petitioner did not have a fair hearing before the board and on appeal to the general president. The finding of the trial court to the effect that the election board acted in good faith and fairly is supported by substantial evidence.

Petitioner also contends that the court erred in finding that she had not exhausted her remedies as provided by the constitution and bylaws of the union. The above conclusion regarding the hearing before the board is determinative of the present appeal, irrespective of whether petitioner had exhausted the remedies available to her within the union. It is appropriate, however, that this contention regarding exhaustion of remedies be determined, for the reason there is a provision in the constitution of the union (art. XX, § 21) to the effect that any member of a union who brings a legal action against a local union without first exhausting all remedies of appeal provided therein shall thereafter be ineligible as a candidate for any office in any union, and shall be subject to charges for such violation of the constitution. We have examined the bylaws and constitution and have concluded that the finding that she had not exhausted such remedies was erroneous.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied March 12, 1957, and appellant's petition for a hearing by the Supreme Court was denied April 12, 1957. Carter, J., was of the opinion that the petition should be granted.